UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ISAIAS SANCHEZ,<br><br>Plaintiff,<br><br>v.<br><br>NEW ENGLAND CONFECTIONERY COMPANY, INC. d/b/a NECCO, and BAKERY, CONFECTIONARY, TOBACCO WORKERS AND GRAIN MILNERS INTERNATIONAL UNION, AFL-CIO LOCAL NO. 348,<br><br>Defendants. | Civil Action No. 14-11353-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.** November 20, 2014

### I. Introduction

Plaintiff Isaias Sanchez ("Sanchez") brings this hybrid action pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. D. 1. Sanchez alleges a breach of a collective bargaining agreement ("CBA") by the New England Confectionary Company ("NECCO") and a breach of the duty of fair representation by the Bakery, Confectionery, Tobacco Workers and Grain Milners International Union, AFL-CIO Local No. 348 ("Local 348"). Id. at 1. Both defendants have moved to dismiss. D. 10, 15. For the reasons stated below, the Court DENIES Sanchez's motion to disqualify Local 348's counsel, D. 21, and DENIES the motions to dismiss. D. 10, 15.

1

## II. Standard of Review

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court determines if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011)). "[T]he plaintiff need not demonstrate [he] is likely to prevail" at this stage, only that his claims are "facially plausible." García-Catalán v. United States, 734 F.3d 100, 102, 103 (1st Cir. 2013) (citations omitted). A complaint must include facts sufficient to "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (footnote omitted). This determination requires a two-step inquiry. García-Catalán, 734 F.3d at 103. First, the Court distinguishes between factual and conclusory legal allegations in the complaint. Morales-Cruz v. Univ. of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012). Second, taking the Plaintiff's factual allegations as true, the Court must draw "the reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).

A litigant need not plead all elements of a claim in his complaint, "provided that, in sum, the allegations of the complaint make the claim as a whole at least plausible." Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 24 (1st Cir. 2014) (quoting Ocasio-Hernández, 640 F.3d at 14-15 (1st Cir. 2011)). "In determining whether a [pleading] crosses the plausibility threshold, the reviewing court [must] draw on its judicial experience and common sense . . . . This context-specific inquiry does not demand a high degree of factual specificity." García-Catalán, 734 F.3d at 103 (citations and internal quotation marks omitted). The Court may consider documents attached or otherwise fairly incorporated into the complaint. Schatz, 669 F.3d at 55 (footnote omitted).

**III.     Factual Allegations**[1]

From 1997 through April 18, 2013, Sanchez was a cook in a section of the NECCO candy factory known as Department 770.  D. 1 ¶ 6.  On April 12, 2013, Sanchez was temporarily assigned to a different department, a transfer he immediately protested on seniority grounds.  Id. ¶ 7.  When asked to relocate, Sanchez told his supervisor he wished to speak with his union representative.  Id.  A discussion ensued in which Sanchez protested the transfer.  D. 1, Exh. 4 at 2-6 (arbitration award).[2]  The supervisor later reported Sanchez's protest to NECCO's human resources department.  Id. at 5.  Later that morning, a representative from NECCO's human resources department met with Sanchez, his supervisor and a Spanish-speaking union representative.  Id. at 5-6; D. 1 ¶ 9.  Following the first meeting, and after the human resources representative spoke to several individuals concerning Sanchez's conduct, he met with Sanchez again.  D. 1, Exh. 4 at 6-7.  Although Sanchez requested that a Spanish-speaking union representative be present at the meeting, the representative was unavailable.  Id. at 5, 7.  Instead a non-Spanish-speaking union representative attended the meeting and a NECCO supervisor translated for Sanchez.  Id.  At this meeting, NECCO suspended Sanchez for three days for an alleged violation of the company's workplace violence policy and he was escorted from the facility by two police officers.  D. 1 ¶¶ 9, 10.

On April 18, 2013, NECCO held a post-suspension meeting and terminated Sanchez for violation of the workplace violence policy.  Id. ¶ 11.  Neither Sanchez nor his private, non-union attorney were in attendance.  Id.  Sanchez alleges that NECCO's actions violated the CBA because he was terminated without just cause and that Local 348 failed to request mandatory

---

[1] Except where otherwise noted, the following summary is based upon the allegations in Sanchez's complaint, D. 1.

[2] Because Sanchez attached both the arbitration award and the collective bargaining agreement to the complaint, the Court may consider these documents in ruling on the motion to dismiss.  Schatz, 669 F.3d at 55.

arbitration within thirty days of the April 18, 2013 meeting, as required by the CBA. Id. ¶¶ 12, 14.

The arbitration of Sanchez's grievance followed, held over two days on November 18, 2013 and December 12, 2013. D. 1, Exh. 4 at 1. The parties agreed on the following questions: (1) whether the grievance was arbitrable due to the untimely filing, and (2) whether NECCO had just cause to discharge Sanchez, and if not, the appropriate remedy for the company's action. Id. The arbitrator heard argument from representatives of Sanchez and NECCO and considered evidence. Id. He also heard testimony of witnesses, including Sanchez, id. at 2-3, his supervisor Luis Centeio, id. at 3-4, his colleague Alberto Vasquez (who overheard portions of the interaction at issue between Sanchez and Centeio), id. at 4, and the representative of NECCO's human resources department, Brian Benoit, who met with Sanchez twice on the day in question, id. at 5-7. The parties submitted written briefs following the hearing, which the arbitrator considered in drafting his award. Id. at 2.

At the arbitration, the parties stipulated that the attorney responsible for filing Sanchez's grievance, attorney Anne Sills, mistakenly believed the union was postponing the filing period while Sanchez's private attorney "sought to get Sanchez back to work." Id. at 8-9. The arbitrator determined that Sanchez's termination was not grievable under the CBA due to the untimely filing. D. 1 ¶ 16. However, [p]ursuant to the agreement of the Union and Employer, [the arbitrator gave] full consideration to the Employer's decision to terminate" Sanchez. D. 1, Exh. 4 at 19. The arbitrator determined that, had the grievance been timely filed, he would have upheld NECCO's termination of Sanchez on insubordination grounds and explained his reasons for doing based upon the evidence presented. D. 1 ¶¶ 16, 18; D. 1, Exh. 4 at 19-22. Sanchez notes, however, that insubordination was not NECCO's stated reason for termination. Id. ¶ 18.

4

## IV. Procedural History

Sanchez instituted this action on March 25, 2014. D. 1. Local 348 and NECCO have now moved to dismiss. D. 10, 15. Sanchez subsequently moved to disqualify Local 348's counsel from representing the union in this case. D. 21. The Court heard the parties on the pending motions and took these matters under advisement. D. 26.

## V. Discussion

### A. Hybrid Actions

Because hybrid claims (i.e., claims in which an employee alleges both that an employer violated the CBA and the union violated its duty of fair representation) are "inextricably linked," Demars v. Gen. Dynamics Corp., 779 F.2d 95, 97 (1st Cir. 1985), a failure to allege plausibly either that NECCO breached its CBA or that Local 348 breached its duty of fair representation will warrant dismissal. See Rosario v. Paul Revere Transp., LLC, No. 13-12633-RGS, 2014 WL 585860 at *2 (D. Mass. Feb. 13, 2014). That is, "[t]o prevail, the plaintiff must prove both that the employer broke the [CBA] and that the union breached its duty of fair representation, in order to recover against either [entity]." Balser v. Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers (IUE) Local 201, 661 F.3d 109, 118 (1st Cir. 2011) (citation and internal quotation marks omitted).

### B. Local 348

#### 1. Motion to Disqualify Local 348's Counsel

Sanchez has moved to disqualify Local 348's attorney Paul Kelly and his firm, Segal Roitman, LLP, under Mass. Rules of Professional Conduct 1.9, 1.10 and 3.7 because attorney Sills, Kelly's colleague at the firm, previously advocated for Sanchez, a former Local 348 member, in the grievance process after he was terminated by NECCO. D. 21 at 2. Sanchez

5

alleges that there is a conflict between the prior representation and the representation of the union in this case. Id.

Rules 1.9 and 1.10 do not aid Sanchez's motion because those rules concern the interests of a former client and Sills was not Sanchez's attorney in the grievance procedure against NECCO, but served as Local 348's attorney. See Best v. Rome, 858 F. Supp. 271, 276 (D. Mass. 1994) aff'd, 47 F.3d 1156 (1st Cir. 1995) (citing Peterson v. Kennedy, 771 F.2d 1244, 1258 (9th Cir. 1985)) (noting that "[i]t is well established that although a union attorney may have some ethical obligations to a grievant, the attorney's principal client is the union, which has retained the attorney, pays for any legal services, and is often the party to the arbitration proceedings"). Moreover, although Sanchez claims that attorney Sills may be a witness in these proceedings, Rule 3.7 does not appear to bar attorney Kelly's representation of Local 348 either. First, that rule provides that "a lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." and, as previously discussed Rule 1.9 does not apply because Sanchez is not a former client and Rule 1.7 is inapplicable because Sanchez is not a client or former client and representation of Local 348 will not be "materially limited" by any responsibility to Sanchez. Moreover, attorney Kelly, not attorney Sills, is the union's attorney in this case and "[the primary concerns of Rule 3.7] are absent or, at least, greatly reduced, when the lawyer-witness does not act as trial counsel, even if [s]he performs behind-the-scenes work for the client in the same case." Culebras Enterprises Corp. v. Rivera-Rios, 846 F.2d 94, 100 (1st Cir. 1988) (footnote omitted). Accordingly, the Court DENIES the motion to disqualify counsel, D. 21.

### 2. *Local 348's Duty of Fair Representation*

A breach of a union's duty of fair representation "occurs only when a union's conduct . . . is arbitrary, discriminatory, or in bad faith, and seriously undermine[s] the integrity of the

arbitral process." MacKnight v. Leonard Morse Hosp., 828 F.2d 48, 51 (1st Cir. 1987) (citation and internal quotation marks omitted). The Court considers whether "there is substantial reason to believe that a union breach of duty contributed to the erroneous outcome of the contractual proceedings." Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 568 (1976). Negligence alone does not constitute a breach. Early v. E. Transfer, 699 F.2d 552, 556 (1st Cir. 1983) (citation omitted). "[C]ourts have not allowed employees to challenge the underlying merits of arbitration awards by way of Section 301 *absent circumstances that have impugned the integrity of the arbitration process*, for instance, fraud, deceit, or breach of the duty of fair representation or unless the grievance procedure was a sham, substantially inadequate or substantially unavailable." Ramirez-Lebron v. Int'l Shipping Agency, Inc., 593 F.3d 124, 131 (1st Cir. 2010) (citation and internal quotation marks omitted) (emphasis in original). "Without proof of the union's misconduct," courts "are loathe to interfere in labor relations and review the substantive merits of an employee's grievance." Id. at 133.

A union is accorded "considerable discretion in dealing with grievance matters," and "[e]ven negligence or erroneous judgment on the part of the union does not meet the high threshold of 'arbitrary, discriminatory, or bad faith.'" Newbanks v. Cent. Gulf Lines, Inc., 64 F. Supp. 2d 1, 4-5 (D. Mass. 1999) (granting summary judgment to union when plaintiff was fired for insubordination, arbitration was denied and plaintiff failed to receive notification of his right to appeal); Amalgamated Transit Union Local No. 1498 (Jefferson Partners L.P.) & Raymond Jones, 360 NLRB 96 (Apr. 30, 2014) (reversing finding of violation of duty of fair representation due to negligent failure to file arbitration demand). A union's conduct may be considered arbitrary "if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." Emmanuel

v. Int'l Bhd. of Teamsters, Local Union No. 25, 426 F.3d 416, 420 (1st Cir. 2005) (quoting Miller v. United States Postal Serv., 985 F.2d 9, at 11-12 (1st Cir. 1993)).

Sanchez's primary allegations against Local 348 are: (1) following his termination, Local 348 failed to request mandatory arbitration within thirty days, as required by the CBA; (2) the union acted arbitrarily against Sanchez in the processing of his grievance because he had obtained the advice and assistance of a private, non-union attorney during NECCO's allegedly sham investigation; and (3) although the arbitrator reached the merits of NECCO's termination decision, the failure to seek arbitration in a timely fashion "tainted" the arbitration process against him.[3] D. 1 ¶¶ 14-15. The arbitration award, attached as an exhibit to the complaint, includes a stipulation by Local 348 that the attorney responsible for filing the grievance, attorney Sills, mistakenly believed the union was postponing the filing period while Sanchez's private attorney "sought to get Sanchez back to work." D. 1, Exh. 4 at 8-9. The stipulation further explains that upon her return from vacation, she learned the union had not intended to postpone and that the filing period had lapsed. Id. Attorney Sills filed the grievance the following day. Id. At the hearing on the grievance, the arbitrator considered both whether the grievance was arbitrable due to the untimely nature of its filing and whether NECCO had just cause to discharge Sanchez. Id. at 1. Though the arbitrator first concluded that the grievance was untimely, the arbitrator stated he gave "full consideration to the Employer's decision to terminate the Grievant" and found that he still "would have sustained the Grievant's discharge." Id. at 22.

At the motion to dismiss stage, the Court merely inquires into plausibility, an "inquiry properly tak[ing] into account whether discovery can reasonably be expected to fill any holes in the pleader's case." Butler v. Balolia, 736 F.3d 609, 617 (1st Cir. 2013) (quoting García-Catalán,

---

[3] At the hearing on the matter, D. 26, counsel for Sanchez explained that he does not contest Local 348's handling of his case at the arbitration, but only the failure to file the grievance in a timely fashion.

8

734 F.3d. at 104). The plausibility standard, certainly, does not relieve Sanchez of his obligation to plead discriminatory, arbitrary or bad faith conduct on the part of the union, as negligence is insufficient to state a breach of the duty of fair representation. Rosario, 2014 WL 585860 at *3 (rejecting claim of breach of duty of fair representation by union when plaintiff alleged only negligence). However, a court may not disregard properly pled factual allegations "even if it strikes a savvy judge that actual proof of those facts is improbable." Twombly, 550 U.S. at 556. Although the arbitrator did reach the merits of Sanchez's claim, the Court cannot say that he has failed stay a claim as to Local 348's violation of its duty of fair representation.

It is correct that the arbitrator considered "the merits of [Sanchez's] claim," D. 1, Exh. 4 at 3, during a hearing held on two separate days, at which representatives of the parties appeared, offered evidence and cross-examined witnesses, including Sanchez, his supervisor, Luis Centeio, and a colleague who was present for the incident, Alberto Vasquez. Id. at 2-9. The arbitrator accepted written briefs after the hearing, id. at 2, summarized the testimony of the witnesses recounting the events giving rise to the arbitration, id. at 2-7, and addressed Sanchez's termination in his ruling. In this regard, he noted that the "witness statements support the view that the Grievant was loud and angry," "the Grievant was insubordinate on more than one occasion and behaved, at a minimum, in a angry manner toward his supervisor in front of other employees" and that "the evidence clearly demonstrates that the Grievant's conduct was serious and provided the Employer with justification to terminate his employment." Id. at 20-21. In addition, the arbitrator noted that he would have reached the same conclusion even under the reasonable doubt standard of proof. Id. at 21, n. 9.

Even against this background, however, the Court cannot say that Sanchez's allegation that the arbitration was "tainted" by the untimely filing of his grievance is an implausible one. In support of this contention, Sanchez contends that the arbitrator's conclusion that NECCO had

9

just cause to fire him for insubordination was based on incomplete record and/or improper standards where he specifically "failed to apply the correct standard of proof and ignored Sanchez's work history, the lower level of discipline given to employees in similar situations, and the fact that Sanchez' supervisor violated the collective bargaining agreement by re-assigning Sanchez" to a different department. D. 1 ¶ 19. Although the pleadings (and exhibits attached and incorporated therein) make clear that the arbitrator gave substantially more than a cursory consideration of Sanchez's grievance, the Court cannot conclude that Sanchez has insufficiently pled that the arbitrator would have conducted a more fulsome consideration of his grievance without the "taint" from the untimely filing of his grievance by the union. Moreover, Sanchez also alleges that Local 348's failure to file the grievance in a timely fashion was itself an arbitrary or discriminatory act, which given its alleged "taint" on his arbitration, led to harm to him. Given the juncture of this case and the fact that such allegations give rise to a plausible basis for his claim against Local 348, the Court DENIES the motion to dismiss by Local 348, D. 10.

### C. NECCO

Although Sanchez has stated a claim against Local 348, his hybrid action will survive only if he has also stated a plausible claim against his employer, NECCO. Rosario, 2014 WL 585860, at *2. As noted before, an employee may only challenge the underlying merits of arbitration awards by way of Section 301 in limited circumstances including but not limited to circumstances that have "impugned the integrity of the arbitration process" or involve a breach of the duty of fair representation. Ramirez-Lebron, 593 F.3d at 131.

Here, Sanchez alleges that Local 348 breached its duty of fair representation. He further alleges that there was no basis for the arbitrator's conclusion that he violated the workplace violence policy or was insubordinate, as "every witness" denied that Sanchez threatened his

supervisor in their dispute over his reassignment.  D. 1 ¶¶ 11, 13.  Sanchez claims that "[t]he arbitrator's determination that Necco had just cause to fire Sanchez for insubordination exceeded his powers under the collective bargaining agreement" and he failed to apply the correct standard or consider the full record.   D. 1 ¶ 19.

The Court recognizes that a review of an arbitrator's final decision, even in the context of procedural unfairness, is "very limited."  Ramirez-Lebron, 593 F.3d at 134.  Though this is a LMRA case and is therefore not directly governed by the guidelines of the Federal Arbitration Act ("FAA"), "[f]ederal courts rely on FAA cases to inform their LMRA analysis." Providence Journal Co. v. Providence Newspaper Guild, 271 F.3d 16, 19 n. 3 (1st Cir. 2001).  Reasons to vacate an award under the FAA include corruption, partiality or "any other misbehavior by which the rights of any party have been prejudiced."  9 U.S.C § 10(a)(1)-(4).  Although it is yet to be seen if Sanchez can prove his claims, at this stage it is the Court's role to inquire as to plausibility, drawing all inferences in Sanchez's favor.  Sanchez has alleged factual circumstances that allegedly impugned the integrity of the arbitration process, and he may proceed to discovery to prove his claims.  Whether Sanchez proves his claim against NECCO will remain for trial or, on a record of undisputed facts, for summary judgment, but as with his claim against Local 348, he has stated a claim against NECCO.  Accordingly, the Court DENIES NECCO's motion to dismiss, D. 15.

At the hearing on the pending motions, NECCO requested that should the Court deny the motions to dismiss, it should stay the action against NECCO since a failure to find a breach of the duty of fair representation by Local 348 will end the suit.  NECCO is correct that if "[Sanchez] cannot firmly plant each cause of action's foot on legally and factually-supported ground, [his] hybrid claim will topple."  Balser, 661 F.3d at 118.  However, should a factfinder conclude there was a breach of the duty of fair representation, it must also consider whether

NECCO violated the CBA. Accordingly, in the interest of judicial economy so that the case against both defendants can proceed in the usual course on parallel tracks, the Court DENIES the request to stay the action as to NECCO.

## VI. Conclusion

For the foregoing reasons, the Court DENIES Sanchez's motion to disqualify Local 348's counsel and DENIES Local 348 and NECCO's motions to dismiss, D. 10, D. 15.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge