UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ISAIAS SANCHEZ,<br><br>    Plaintiff,<br><br>v.<br><br>NEW ENGLAND CONFECTIONERY COMPANY, INC. d/b/a NECCO, and BAKERY, CONFECTIONARY, TOBACCO WORKERS AND GRAIN MILNERS INTERNATIONAL UNION, AFL-CIO LOCAL NO. 348,<br>    Defendants. | Civil Action No. 14-11353-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                   **August 14, 2015**

**I.    Introduction**

Plaintiff Isaias Sanchez ("Sanchez") brings this hybrid action under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. D. 1. Sanchez alleges that defendant Bakery, Confectionery, Tobacco Workers and Grain Milners International Union, AFL-CIO Local No. 348 ("Local 348") breached its duty of fair representation and defendant New England Confectionary Company ("NECCO") breached the collective bargaining agreement. Id. at 1. Local 348 has moved for summary judgment. D. 50. For the reasons stated below, the Court ALLOWS the motion.

**II.   Standard of Review**

The Court grants summary judgment where there is no genuine dispute on any material

1

fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)) (internal quotation mark omitted). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (quoting Anderson, 477 U.S. at 249) (alteration in original). "[C]onclusory allegations, improbable inferences, and unsupported speculation" do not satisfy the non-moving party's burden. Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences" in her favor. Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

**III.   Factual Allegations**

Unless otherwise noted, all facts are drawn from Sanchez's statement of material facts, D. 57, and Local 348's statement of material facts, D. 52.

Since 1997, Sanchez was a NECCO employee represented by Local 348. D. 52 ¶ 3. Local 348 is a labor union representing approximately 330 employees at NECCO's facility in Revere, Massachusetts. Id. ¶ 5. Juan Figueroa ("Figueroa") is Local 348's Financial Secretary and Business Agent. Id. ¶ 6.

2

On April 12, 2013, Figueroa attended a meeting at NECCO with NECCO Human Resource Manager Brian Benoit ("Benoit"), Sanchez's supervisor Luis Centeio ("Centeio") and Sanchez to address a workplace incident. Id. ¶ 7. Benoit told Figueroa that (1) Sanchez had refused to go to another department at Centeio's request and (2) Sanchez had allegedly threatened Centeio. Id. At the end of the meeting, no discipline action was taken and everyone returned to work. Id. ¶ 8. Later that day, NECCO management met with Sanchez again and gave him a three-day suspension. Id. ¶ 9. On April 18, NECCO notified Sanchez by letter that it was terminating him for violating NECCO's Workplace Violence Policy and Shop Rules. Id. ¶ 11; D. 52-1 (NECCO letter).

On April 24, 2013, a union steward filed a grievance that Figueroa had drafted protesting Sanchez's termination. D. 52 ¶ 12. NECCO denied the grievance five days later. Id. On May 6, Local 348 submitted the grievance again and NECCO denied it a second time on May 13. Id. Sometime around May 18, Figueroa presented Sanchez's case to Local 348's Executive Board at its monthly meeting. Id. ¶ 13. Local 348 directed Figueroa to have Anne Sills ("Sills"), a partner at Segal Roitman LLP and Local 348's attorney, review Sanchez's case to determine whether it should go to arbitration. Id.; D. 57 ¶¶ 13, 33. The collective bargaining agreement required that any demand for arbitration be filed within thirty days of NECCO's second denial. D. 57 ¶ 35.

On May 21, 2013, Figueroa brought Sanchez to meet with Sills. D. 52 ¶ 14. Sills informed them that she believed the case should go to arbitration because it was a "he says-he says" case and Local 348 had a "50/50 chance" of prevailing. Id.; D. 57 ¶ 14. At some point after the meeting, Figueroa obtained approval from Local 348's Executive Board to arbitrate Sanchez's termination. D. 52 ¶ 15. Figueroa believes he communicated the Executive Board's decision to Sills, but he has no specific recollection or record of doing so. Id. ¶ 16; D. 57 ¶ 15.

3

Sills believes that she and Figueroa spoke around June 4, 2013 and she has a "sticky" note that she wrote and placed in the case file after their conversation. D. 52 ¶ 17; Sills Aff., D. 53 ¶ 8. She understood from the call that Local 348 was postponing filing for arbitration while Sanchez's personal attorney attempted to settle the case. D. 52 ¶ 17; D. 53 ¶ 8.

On June 27, 2013, Sills contacted Figueroa and asked for an update on Sanchez's case. D. 52 ¶ 19; D. 53 ¶ 9. Figueroa was surprised to learn that she had not yet filed for arbitration. D. 52 ¶ 19; D. 57 ¶ 31. Sills was also surprised about the miscommunication. D. 52 ¶ 19. After the call, Sills filed a demand for arbitration on Sanchez's behalf with the American Arbitration Association. D. 52 ¶ 20; D. 57 ¶ 31. Sills also attempted to reach an attorney who had represented NECCO in a previous matter to inform him of the late filing, but she was told that the attorney no longer worked at the firm. D. 52 ¶ 20.

The arbitration hearing took place over two days in Boston. Id. ¶ 23; Arb. Award, D. 1-4 at 1. The parties presented two issues to the arbitrator: (1) whether the grievance was arbitrable because the demand for arbitration was untimely and (2) whether NECCO had just cause to discharge Sanchez. D. 1-4 at 1. The parties had "full opportunity to offer evidence and argument and to examine and cross-examine witnesses." D. 1-4 at 1. The parties also submitted post-hearing briefs, which were "fully considered." Id. at 2. Sills testified that she spent "a lot of time working and building a case on the merits." Sills Dep., D. 55-2 at 45. The first issue had no effect on her ability to argue the merits of Sanchez's termination. Id. at 45-46. Sills cross-examined NECCO witnesses, prepared Sanchez to testify and presented both Sanchez and his co-worker to testify on Sanchez's behalf. D. 52 ¶ 22.

On March 3, 2014, the arbitrator issued a 22-page, single-spaced decision. D. 1-4. The arbitrator found that the grievance was not timely filed. Id. at 19. Nevertheless, the arbitrator

stated he gave "full consideration" to the second issue and concluded that NECCO had just cause to fire Sanchez. Id.

## IV. Procedural History

On March 25, 2014, Sanchez filed this lawsuit. D. 1. Local 348 and NECCO moved to dismiss on April 23 and May 1, respectively. D. 10, 15. On May 20, Sanchez moved to disqualify Local 348's counsel. D. 21. The Court denied Sanchez's motion, both motions to dismiss and NECCO's oral motion to stay further proceedings against it. D. 27 at 12. On December 29, NECCO filed a motion to reconsider the denial of its oral motion to stay. D. 35. On January 13, 2015, the Court allowed NECCO's motion and stayed all further proceedings against NECCO pending the outcome of the proceedings against Local 348 because Sanchez's hybrid claim required proving that both Local 348 and NECCO breached its respective obligations. D. 44. On March 30, 2015, Local 348 moved for summary judgment. D. 50. The Court heard the parties on the pending motion on July 23, 2015 and took the matter under advisement. D. 60.

## V. Discussion

As the exclusive bargaining representative of the employees, a union has a duty of fair representation to represent its members in collective bargaining and in the enforcement of any collective bargaining agreement. Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25, 426 F.3d 416, 419-20 (1st Cir. 2005). A union breaches this duty "only when [its] conduct . . . is arbitrary, discriminatory, or in bad faith." Miller v. United States Postal Serv., 985 F.2d 9, 12 (1st Cir. 1993) (quoting Vaca v. Sipes, 386 U.S. 171, 190 (1967)). A union may not "arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." Newbanks v. Cent. Gulf Lines, Inc., 64 F. Supp. 2d 1, 4 (D. Mass. 1999) (citations omitted). But "mere negligence or

erroneous judgment will not constitute a breach of the duty of fair representation." Miller, 985 F.2d at 12.

A union's actions are arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." Id. (citing Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991)) (internal quotation marks omitted). "This standard requires the court to examine objectively the competence of [Local 348's] representation." Emmanuel, 426 F.3d at 420. The Court, however, "may not substitute [its] own views for those of the union." Miller, 985 F.2d at 12. "[A]ny substantial examination of a union's performance . . . must be highly deferential" because of "the well-recognized need to allow unions ample latitude in the performance of their representative duties." Id. (citations and internal quotation marks omitted).

Here, Sanchez does not argue that Local 348 breached its duty out of discriminatory animus. D. 54. Nor does Sanchez argue that Local 348 acted in bad faith because he concedes that "admittedly, there is little in the way of bad faith." Id. at 7; see id. at 2 (stating that Local 348's actions were "not necessarily motivated by bad faith"). Instead, Sanchez's sole argument on summary judgment is that Local 348 breached its duty of fair representation because it "fail[ed] to file a request for arbitration" of Sanchez's grievance within thirty days of the deadline under the collective bargaining agreement. D. 54 at 1.

For support, Sanchez relies on De Arroyo v. Sindicato de Trabajadores Packinghouse, 425 F. 2d 281 (1st Cir. 1970), and Soto Segarra v. Sea-Land Service, Inc., 581 F.2d 291 (1st Cir. 1978). D. 54 at 7. Both cases, however, are distinguishable. They involved unions that made no effort to advocate for their members. In De Arroyo, the First Circuit affirmed a jury's finding that the union had breached its duty of fair representation because "[t]here was no evidence . . . that the Union ever investigated or made any judgment concerning the merits" of all but one of

6

the plaintiffs' cases. 425 F.2d at 284. Instead, the union devoted its "entire attention" during this period on a National Labor Relations Board proceeding, one that the union president "inexplicably" believed would adequately protect the plaintiffs even though the proceeding had been confined to issues irrelevant to their grievances. Id. In Soto Segarra, the First Circuit affirmed a district court's ruling that the union had breached its duty because even though the plaintiff's "six-month letter writing campaign provided the union with many adequate opportunities" to proceed with the grievance process, the union's "initial silence and continuing inaction necessarily confirmed [the] suspicion that the union would be less than vigorous in his defense." 581 F.2d at 296. "No evidence even remotely indicated that the union's failure to process the grievance was based on an investigation and evaluation of the merits." Id. at 295. The First Circuit also noted that the union had an interest in treating the plaintiff poorly because the union had expelled him and he had since become its "most outspoken critic." Id. at 296.

Here, unlike the unions in De Arroyo and Soto Segarra, Local 348 and Sills did not ignore Sanchez's grievance. Nor did they fail to investigate whether his grievance had merit. Local 348 properly filed his grievance with NECCO twice, conducted a meeting with Sills to discuss his case and the likelihood of success, and approved advancing his case to arbitration. D. 52 ¶¶ 10-15. Sills argued Sanchez's grievance at the arbitration, id. ¶ 22, and Sanchez makes no argument that her performance was lacking in this regard. D. 51 at 10 n.1; D. 54. Thus, neither De Arroyo nor Soto Segarra requires the Court to find for Sanchez.

Sanchez also relies on Zuniga v. United Can Co., 812 F.2d 443, 451 (9th Cir. 1987). D. 54 at 6. In Zuniga, the Ninth Circuit affirmed a jury finding that the union had breached its duty of fair representation. Under Ninth Circuit case law, "[w]here the union fails to perform a ministerial act not requiring the exercise of judgment and there is no rational and proper basis for the conduct," "such an omission can constitute arbitrary conduct" if the union's failure to act

7

"prejudice[s] a strong interest" of the employee. Zuniga, 812 F.2d at 451. The Ninth Circuit held that the plaintiff offered "substantial evidence" that his union had "failed to perform ministerial acts without reasonable basis to the detriment of plaintiff's strong interest." Id. For example, union officials in Zuniga (1) "failed to timely advise plaintiff regarding [a] medical arbitration [option]," which the plaintiff would have accepted had he been informed; (2) "refused to contact [his] workers' compensation attorney regarding the possible impact of medical arbitration on [his] then-pending workers' compensation case without any reason" despite his request; (3) "failed to timely apprise" other union officials of the existence of status of his grievance when the plaintiff's union merged into another union and (4) "consistently refused to timely pursue plaintiff's meritorious grievance." Id.

Zuniga is also unavailing. First, it is unclear whether Sanchez's interpretation of the Ninth Circuit's standard is consistent with First Circuit case law. Plumley v. S. Container, Inc., No. 00-140-P-C, 2001 WL 1188469, at *16 (D. Me. Oct. 9, 2001) (granting summary judgment and concluding that "[u]nder the First Circuit's standard," that a reasonable factfinder could not take the "evidentiary leap" to infer a breach of the duty of fair representation "merely from the fact that the Union did not present a timely request for arbitration of his grievance") aff'd, 303 F.3d 364 (1st Cir. 2002).

Second, the evidence establishes that Local 348's failure to file Sanchez's grievance by the deadline was due only to negligence. Figueroa believes he told Sills that Local 348 wanted to arbitrate Sanchez's grievance. D. 52 ¶ 16; D. 57 ¶ 15. On the other hand, Sills recalls learning that Local 348 was postponing arbitration while Sanchez's own attorney attempted to settle the case. D. 52 ¶ 17; D. 53 ¶ 8. At bottom, a miscommunication occurred. Both parties were surprised that they had misunderstood each other and worked immediately to fix it. D. 52 ¶ 19; D. 57 ¶ 31. Based on the record here, especially where no evidence exists that either

Figueroa or Sills acted intentionally or in bad faith, a factfinder cannot reasonably conclude that Local 348's lapse was "so far outside a wide range of reasonableness as to be irrational." Emmanuel, 426 F.3d at 420 (quoting Miller, 985 F.2d at 11-12) (internal quotation mark omitted). "Mere negligence or error is not enough." MacKnight v. Leonard Morse Hosp., 828 F.2d 48, 51 (1st Cir. 1987). Moreover, other courts agree that a negligent failure to file is not a breach of the duty of fair representation, especially when the union's failure can be explained. See, e.g., Ahmad v. United Parcel Serv., 281 F. App'x 102, 105 (3d Cir. 2008) (stating that although the plaintiff "argues that the Union breached its duty of fair representation due to [its] failure to timely file the Step Three appeal . . . . this Court has stated that mere negligence is not enough to support a claim of unfair representation"); Shufford v. Truck Drivers, Helpers, Taxicab Drivers, Garage Emps. & Airport Emps. Local Union No. 355, 954 F. Supp. 1080, 1090 (D. Md. 1996) (concluding that the union's untimely filing based on past practice between the union and the company and a mistaken belief that the grievances would be held in abeyance was "at most negligent," not irrational); Giordano v. Local 804, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 634 F. Supp. 953, 957 (S.D.N.Y. 1986) (holding that a union's reliance on past practice and its consideration of costs to save expenses, which resulted in an arbitral decision without a decision on the merits because the arbitrator found that the grievance was time barred, was not arbitrary and perfunctory conduct that went beyond mere negligence); Amalgamated Transit Union Local No. 1498 (Jefferson Partners L.P.) & Raymond Jones, 360 NLRB No. 96, at *2 (Apr. 30, 2014) (holding that "a union that negligently misses a filing deadline for an arbitration, even if it results in the matter being time barred, does not violate its duty of fair representation" because "[s]omething more than ineptitude or mismanagement is required").

Finally, even if the Zuniga standard applied here, Sanchez has not met it because there is no evidence in the record that a "strong interest" of Sanchez was prejudiced. Zuniga, 812 F.2d at 451. Newby v. Potter, 480 F. Supp. 2d 991 (N.D. Ohio 2007), is instructive. In Newby, the plaintiff argued that the union breached its duty of fair representation in part because the union had "failed to timely appeal his grievance to Step Three arbitration." 480 F. Supp. 2d at 998. Although the union's filing was over five months late, the parties conducted a one-day arbitration on whether the grievance was arbitrable and whether just cause existed to terminate the plaintiff. Id. at 996. The arbitrator issued a "seven-page discussion" on why the grievance was not arbitrable due to the untimely filing. Id. "In the last sentence of her discussion," the arbitrator stated: "I feel obliged to note, in passing, that since the parties fully litigated the merits of this case, it is my assessment that the grievance, even if timely, would not have been successful in overturning grievant's removal on either due process grounds or on the merits." Id. The court granted summary judgment for the union. The court explained that while "[u]nexplained failure to timely file a grievance may constitute arbitrary conduct," "to constitute a breach of the duty of fair representation, the union's inaction must bar access to the labor-management grievance resolution apparatus." Id. at 998. Because the union obtained a "full and fair hearing on the merits of the grievance" despite the untimely appeal, the union's conduct did not substantially prejudice the plaintiff. Id. at 999.

Here, like in Newby, the arbitrator considered arguments on both arbitrability and the merits of Sanchez's discharge. D. 1-4 at 1. The arbitrator gave the parties "full opportunity" to present their case, and the arbitration lasted two days. Id. At least four witnesses testified and the parties submitted post-hearing briefs. Id. at 2-9. The arbitrator issued a 22-page decision after the hearing. Id. at 22. Although the arbitrator found that the grievance was untimely, he analyzed the merits of the parties' dispute in detail and concluded that after a "full

consideration," Sanchez's conduct was "serious and provided the Employer with justification to terminate his employment." Id. at 19, 21. Because Sanchez obtained a "full and fair hearing" of his grievance and he cannot show otherwise, the Court concludes that Local 348 is entitled to summary judgment. Newby, 480 F. Supp. 2d at 999.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Local 348's motion for summary judgment. D. 50. Because Sanchez's hybrid claim requires proving wrongdoing by both NECCO and Local 348, the Court dismisses his claim against NECCO as well. Balser v. Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers (IUE) Local 201, 661 F.3d 109, 118 (1st Cir. 2011) (noting that to prevail on a hybrid claim, "the plaintiff must prove both that the employer broke the [collective bargaining agreement] and that the union breached its duty of fair representation" to recover against either defendant). Judgment shall be entered in favor of both defendants.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge